## 40202. SOTO a/k/a MILLER v. THE STATE.

SMITH, Justice.

Richard R. Soto (also known as Richard R. Miller) was indicted, together with Teresa Faye Whittington, for the January 26, 1982, shooting death of appellant's wife, Cheryl Marie Soto. Appellant was tried in Madison County Superior Court and convicted of murder. He was sentenced to life imprisonment.[1] On appeal, he raises four enumerations of error. We affirm.

On January 27, 1983, appellant gave the following handwritten statement to investigating officers, detailing his version of the events leading to the death of his wife and his subsequent arrest for the crime.[2] "I met Teresa Whittington during late October 1981 at the Starvin' Marvin store on Highway 78. From November 1981 until December 24 I continued to see her on many occasions. This compounded my marital problems. At that point in time, I told Teresa good-bye, that I'm going to stay with my wife. At that time Teresa told me she was not going to give up. One week later we continued with the affair. Once again problems started to arise between Cheryl and I. I told Teresa that I am *not* going to divorce Cheryl and the only way I would be with her was if Cheryl had died. A few days later Teresa said that she would kill her. With that, we continued with our affair, knowing that I would not divorce Cheryl. Three weeks went by.

"After waking at 9:30 a.m. on January 26, Cheryl and I got out of bed. I looked out the window and saw a squirrel. Getting my .22 caliber rifle, I went out and shot it. When I came in the house, Cheryl made me breakfast. I sat, ate my breakfast, and watched T.V. Talking with Cheryl, I learned that the neighbors were going to be gone. Then I went to work. At 12:00 p.m. Teresa called me at work and asked when I was going to pick her up. At 1:00 p.m., I went to my house and told Cheryl I would be back real soon. I picked Teresa up from her house and drove to my house shortly after 1:00 p.m.

"Stopping halfway up the hill, I gave Teresa the gun, then proceeded on up to the house. I walked in the house, saw Cheryl in the bath, then I went outside to the car. Telling Teresa this, she went in the house and I heard one shot. Then Teresa came out and said I don't

---

[1] Although the prosecution sought the death penalty and this case was tried under the Unified Appeal Procedure, the sentencing phase jury became deadlocked at 7-5 during deliberations. A mistrial was declared, and appellant was sentenced to life imprisonment by the trial judge.

[2] Because of numerous abbreviations, appellant's statement has been edited slightly, but only where necessary to facilitate understanding.

think she is dead, then went back in the house. One more shot was fired. Teresa came out, got in the car, and we drove toward her house. On the way Teresa threw the shells out the window while I was still driving. She told me to drop her off at a store in Colbert on Highway 78. After she asked me to call her at her friend Donna's house, I drove off back towards home. After reaching home I went in and saw Cheryl from the kitchen. She was in the living room, lying on her back. Realizing the impact of what had happened, I went back to work scared. At 2:00 p.m., I called Teresa and told her to remain calm. At 5:00 p.m., I went home, saw what had happened, *really happened.* I walked into the bathroom then into the living room via the bedroom then out the door. I then went to the neighbor's and told Donna to call the police. This is true to the best of my knowledge."

When police arrived at the Soto residence in response to this call, they discovered Cheryl Marie Soto lying dead in the living room. The officers made a preliminary search of the house, then questioned appellant, who was still at his neighbor's house. At first appellant denied any wrongdoing, but on January 27 he gave police the above confession. At trial evidence was introduced showing that the murder weapon was a handgun purchased by appellant in an Athens pawn shop in July 1981. Shortly thereafter, appellant purchased a $50,000 term life insurance policy on Cheryl Marie Soto in which he was named as the beneficiary. The victim was pregnant when killed, a fact of which appellant was aware.

Teresa Faye Whittington was tried separately for her role in the murder. She was convicted and sentenced to death. *Whittington v. State,* 252 Ga. 168 (—— SE2d ——) (1984).

1. In his first enumeration of error appellant contends that the trial court should have granted his pretrial motion to suppress evidence obtained in a search conducted January 28, 1983 (two days after the shooting) pursuant to a warrant issued earlier that day. Appellant does not assail the facial validity of the warrant or suggest that its issuance was not supported by probable cause. Instead, he contends that W. C. Fowler, the Justice of the Peace who issued the warrant, was not a "neutral and detached" magistrate as required by the Fourth Amendment (Code Ann. § 1-804) and decisions such as Johnson v. United States, 333 U. S. 10 (68 SC 367, 92 LE 436) (1948), in that at the time he issued the search warrant Fowler was also serving as bailiff for the Madison County Superior Court.

We need not address this claim, however, because appellant has failed to show how he was harmed by the January 28 search. The record shows that on January 27, 1982, police officers responded to a call by appellant's neighbor, who at appellant's request had alerted them to the death of Cheryl Marie Soto. Thus the initial search,

during which police first observed the overall crime scene, the victim, and the interior of appellant's house, was conducted with appellant's consent. See *Dean v. State,* 250 Ga. 77, 80 (295 SE2d 306) (1982); LaFave, Search and Seizure § 8.1 (West 1978). Appellant does not contend that his consent to the January 26 warrantless search was involuntary; nor does he show what additional evidence, if any, was uncovered in the January 28 search he seeks to challenge on appeal.[3] Appellant having failed to show any harm resulting from the issuance of the challenged warrant, there is nothing for this court to review. *Hill v. State,* 237 Ga. 794 (5) (229 SE2d 737) (1976). This enumeration is without merit.[4]

2. In his second enumeration appellant contends that the warrant issued for his arrest on January 27, 1982, was void, for essentially the same reasons advanced in enumeration 1, supra. He argues that any statements made by him while incarcerated under this void arrest warrant must be suppressed as the fruits of an illegal arrest. We disagree.

Our review of the record simply does not support the alleged factual basis of appellant's claim. Testimony by Madison County Sherriff Fortson at the suppression hearing established that appellant's formal arrest under the challenged warrant was not effected until after he had made the above-quoted confession. This testimony was not contradicted by appellant, either at the sup-pression hearing or at trial. Therefore appellant's enumeration, which is predicated on the existence of a void arrest warrant, must fail. Assuming, for the sake of argument, that appellant was under warrantless arrest at the time he made the statement, we find no error. It is clear that police, by virtue of their observations at the crime scene, interviews of appellant, and ongoing investigation into the murder, had by that time narrowed the scope of their in-vestigation to appellant and that they possessed ample probable cause to arrest him for the crime. See *Durden v. State,* 250 Ga. 325 (10) (297 SE2d 237) (1982). As to the alleged technical deficiencies in the arrest warrant, we rejected a similar claim in *Buttrum v. State,* 249 Ga. 652 (2) (293 SE2d 334) (1982), and we see nothing in this case

---

[3] Nothing contained in appellant's motion to suppress, the transcript of the hearing on that motion, or the trial transcript established how the second search harmed appellant at trial.

[4] We do not mean by our decision today to imply approval of the practice of bailiffs simultaneously acting as issuing magistrates, as we can foresee a situation in which this practice might violate the Fourth Amendment's (Code Ann. § 1-804) "neutral and detached magistrate" requirement.

which would cause us to change the views expressed in that opinion.

3. Next appellant contends that the lower court erred in not having the court reporter record and transcribe the voir dire and selection of jurors. Since the filing of appellant's enumeration of errors, however, a transcript of the voir dire and selection of jurors has been transmitted to this court, rendering this enumeration moot.

4. In his final enumeration appellant contends that the trial judge erroneously denied his pretrial motion for a change of venue from Madison County. Appellant alleges that substantial pretrial publicity in Madison County made the selection of an impartial jury there impossible. In support of his motion he introduced clippings of four articles published in Athens, Ga. newspapers in the fall of 1982 during the months prior to the commencement of appellant's trial on November 17, 1982. Three of these articles describe the crime in a straightforward manner and give accounts of various pretrial proceedings, including hearings on appellant's motions and the jury selection procedures. The fourth article, published September 23, 1982, in the Athens Observer, apparently resulted from an interview given by appellant while he was incarcerated and awaiting trial. In it he criticized the Madison County prosecutor and judge assigned to his case, alleging that for political reasons they would not allow him to plead guilty to the crime.

" 'The test as to whether pretrial publicity has so prejudiced a case that an accused can not receive a fair trial is whether the jurors summoned to try the case have formed fixed opinions as to guilt or innocence of the accused from reading such publicity.' " *Harper v. State,* 249 Ga. 519, 529 (292 SE2d 389) (1982); *Dampier v. State,* 245 Ga. 427, 431 (265 SE2d 565) (1980). "To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." Irvin v. Dowd, 366 U. S. 717, 723 (81 SC 1639, 6 LE2d 751) (1961).

Following voir dire of the prospective jurors, the trial judge denied appellant's motion, ruling that the prospective jurors "could lay aside anything that they [have] read, heard, or seen about this particular case and make their decision based on what they hear from the witness stand and the laws as charged." Our review of the transcript of the voir dire examination supports this view. Of the 56 potential jurors examined, only three stated that they had a fixed opinion of appellant's guilt because of pretrial publicity and would

not be able to render a verdict based on the evidence. They were properly excused by the trial court. Three others were excused for reasons unrelated to pretrial publicity. Under our decisions, this low percentage of venire persons excused for prejudice (5%) corroborated the absence of undue pretrial publicity. See *Harper v. State,* supra at 530. The denial of appellant's motion for a change of venue was well within the trial court's discretion, and we find no error. See *Coleman v. State,* 237 Ga. 84 (1) (226 SE2d 911) (1976).

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 9, 1984 —
REHEARING DENIED FEBRUARY 28, 1984.

*Thomas M. Strickland,* for appellant.
Richard R. Soto, *pro se.*
*Lindsay A. Tise, Jr., District Attorney, Barry G. Irwin, Assistant District Attorney, Michael J. Bowers, Attorney General, Paula K. Smith, Staff Assistant Attorney General,* for appellee.