## S06A0608. GRIFFIN v. THE STATE.
### (631 SE2d 671)

MELTON, Justice.

Following a jury trial, Deanthony Griffin appeals his convictions for murder, felony murder, armed robbery, burglary, possession of a firearm during the commission of an armed robbery and possession of a firearm during the commission of a burglary.[1] Griffin contends that the trial court made several errors regarding the admissibility of certain evidence and that he received ineffective assistance of counsel. We affirm.

In the light most favorable to the verdict, the record shows that, on October 25, 2002, David Brian Cribbs, Sr. was found shot to death in his truck parked in the driveway of his home in Savannah, Georgia. His two adult children, David Brian Cribbs, Jr. ("Junior") and Ashley Brooks Cribbs, were also shot to death, and their bodies were found behind a detached garage. All three victims had been shot in the head. The prior day, Griffin borrowed his sister's car to visit Junior, who owed him money. Griffin admitted going to the Cribbs' home twice on the day of the murders, but stated that the Cribbs were not home during either visit. Neighbors heard gunshots around the home at approximately 7:30 p.m., near the last time that the Cribbs children were heard from, and again at 10:00 p.m. that evening, when Cribbs, Sr. returned home for the day. A number of items stolen from the

---

[1] On December 1, 2003, Griffin was indicted for three counts of murder (one for each victim), three counts of felony murder with burglary as the underlying felony, three counts of felony murder with aggravated assault as the underlying felony, three counts of felony murder with armed robbery as the underlying felony, three counts of armed robbery, one count of burglary, three counts of possession of a firearm during the commission of a felony with armed robbery as the underlying felony, and one count of possession of a firearm during the commission of a felony with burglary as the underlying felony. Following a jury trial conducted on February 15-21, 2005, Griffin was convicted on all counts except the felony murder of David Brian Cribbs, Sr. with aggravated assault as the underlying felony and the felony murder of Ashley Cribbs with aggravated assault as the underlying felony. Although the State sought the death penalty for the murders, the jury recommended life imprisonment. On February 21, 2005, Griffin was sentenced to life without parole for each count of murder, to run consecutively; life without parole for each count of felony murder, to run consecutively; life without parole for each count of armed robbery, to run consecutively; twenty consecutive years for burglary; and five consecutive years for each count of possession of a firearm during the commission of a felony. Griffin filed a motion for new trial on March 3, 2005, and amended motions for new trial on August 1 and 15, 2005. The motion was denied on October 28, 2005, and Griffin filed a notice of appeal on November 28, 2005. His timely appeal was docketed in this Court on December 12, 2005 and submitted for decision on the briefs.

Cribbs' home at the time of the murders, including a floor safe, computer equipment, and clothing were subsequently found in a dumpster next to a storage locker Griffin shared with his girlfriend, and the items were contained in plastic bags which had Griffin's fingerprints on them. The plastic bags came from a roll of trash bags found in the trunk of the car which Griffin borrowed from his sister on the day of the murders. This evidence was amply sufficient to authorize the jury to find Griffin guilty beyond a reasonable doubt of all of the crimes for which he was convicted. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Tarver v. State,* 278 Ga. 358, 361 (5) (602 SE2d 627) (2004) (evidence sufficient to find existence of aggravating circumstances under OCGA § 17-10-30 (b)).

1. Griffin contends that the trial court erred by admitting a certain hearsay statement made by Ashley Cribbs before her death to her close friend, Rachel Bolton. During trial, Bolton testified that, on one occasion, she and Ashley Cribbs returned to the Cribbs' home and found Griffin waiting there. At the time, Ashley told Bolton: "What is he doing here? He's not supposed to know where we live." The trial court admitted this statement pursuant to the necessity exception to the hearsay rule.

Hearsay may be admitted under the necessity exception if it meets the two prerequisites of necessity and trustworthiness. *Ward v. State,* 271 Ga. 648, 650 (2) (520 SE2d 205) (1999). The component of necessity is satisfied when the declarant is unavailable, the statement is relevant to a material fact, and the statement is more probative of that fact than other evidence which may be offered. Id. In turn, a statement is appropriately trustworthy if, under the totality of the circumstances, it is "coupled with circumstances which attribute verity to it." Id. Whether a statement is trustworthy is a matter for the trial court's discretion. *Myers v. State,* 275 Ga. 709 (2) (572 SE2d 606) (2002). In this case, Ashley Cribbs was unavailable because she had been murdered, and, as the trial court found, the statement was relevant to show Griffin's motive, intent, and bent of mind. In addition, the statement was trustworthy because Ashley Cribbs was in the act of confiding to her close personal friend. See *Ward,* supra, 271 Ga. at 650 (2) (uncontradicted statements made to one in whom the deceased declarant placed great confidence and to whom the declarant turned for help deemed admissible under the necessity exception). Therefore, the statement was properly admitted under the necessity exception.

Griffin also contends that the admission of the statement violated his right to confront the absent declarant pursuant to *Crawford v. Washington,* 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004). *Crawford,* however, is not applicable to the statement in question, as it was not a "testimonial" statement to which that case applies. See,

e.g., *Brawner v. State*, 278 Ga. 316 (2) (602 SE2d 612) (2004) (statements made during police interrogation subject to *Crawford*).

2. Griffin argues that the trial court erred by denying his motion to suppress statements made by him during a custodial interview conducted approximately four days after he had indicated that he no longer wished to speak to one of the detectives who was questioning him. The record shows that, after the Cribbs' murders in Savannah, Griffin allowed police to search an apartment where he lived in Hilton Head, South Carolina. Cocaine was discovered in the apartment, and Griffin was arrested in South Carolina on a drug offense. While held in South Carolina, Griffin was interviewed on October 28, 2002 regarding the Savannah murders by Investigator Rick Dailey. It is undisputed that Griffin was properly given his *Miranda* rights, which he waived. As the interview progressed, however, Griffin became angry with Investigator Dailey and specifically told him that he did not wish to talk with him anymore, thereby invoking his right to remain silent. Investigator Dailey honored Griffin's wishes and immediately left the room.

Griffin was interviewed a second time on November 1, 2002 by a GBI agent and Investigator Dailey. Griffin did not initiate this communication. Griffin was read his *Miranda* rights prior to questioning, and he signed a waiver of rights form. Investigator Dailey and the GBI agent then proceeded to question Griffin about the Savannah murders, the same subject matter that Investigator Dailey had previously discussed with Griffin.

Relying on *Edwards v. Arizona*, 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981), Griffin contends that the second round of questioning was inappropriate. *Edwards*, however, addresses the propriety of continued questioning after a defendant has invoked his right to counsel, and, as Griffin invoked only his right to remain silent in this case, *Edwards* is not applicable here. See *Fields v. State*, 266 Ga. 241 (1) (466 SE2d 202) (1996) (second interrogation regarding same crime was proper after ten months had elapsed). When a defendant has invoked his right to remain silent, as Griffin did, the propriety of subsequent custodial questioning is governed by *Michigan v. Mosley*, 423 U. S. 96 (96 SC 321, 46 LE2d 313) (1975). In *Mosley*, subsequent custodial interrogation was admissible where the initial invocation of the right to remain silent was "scrupulously honored," a significant period of time had passed, *Miranda* warnings were repeated, and the second interrogation concerned a different crime. Id. at 106. A second interrogation regarding the same crime may also be constitutional

under *Mosley*, however, where the initial invocation of the right to remain silent was scrupulously honored. *Fields*, supra.[2]

Under the facts of this case, the *Mosley* factors are satisfied. First, Investigator Dailey scrupulously honored Griffin's original invocation of his right to remain silent by immediately stopping his interview and physically exiting the interview room. Second, in the four days between interviews, Griffin was not subjected to "repeated efforts to wear down his resistance and make him change his mind" about invoking his right to silence. *Mosley*, supra, 423 U. S. at 104-106. Therefore, the period of time between questioning may be considered significant under the facts of this case. See *Weeks v. Angelone*, 176 F3d 249 (V) (4th Cir. 1999) (significant period of time does not require a durational minimum). Third, Griffin's *Miranda* warnings were repeated prior to the second interview, and he understood his rights, and fourth, because all of the other *Mosley* factors were honored, Griffin was properly questioned a second time about the same crime. *Fields*, supra. Accordingly, the trial court did not err by denying Griffin's motion to suppress all statements made by him during his second interview.

3. Griffin contends that the trial court erred by excluding evidence of a fourth unsolved murder allegedly bearing similarities to the crimes for which he was being tried. Griffin apparently maintains that the evidence would have shown that he could not have committed the fourth murder and that, due to its similarity to the Cribbs' murders, the jury could have inferred that all of the murders were committed by someone else. Evidence of an alternative perpetrator is generally admissible to exonerate a defendant if the evidence relates to a specific accused and does not merely speculate that some unknown person may have committed the crime. *Azizi v. State*, 270 Ga. 709 (6) (512 SE2d 622) (1999). The police officer investigating the fourth murder testified that, although the name of one person had come up during the preliminary investigation, the police had no actual primary suspects for the fourth murder. This testimony, at best, would do no more than cast bare suspicion, and, as such, the trial court properly excluded it. Id.

4. Finally, Griffin contends that he received ineffective assistance, arguing that his trial counsel failed to put up any evidence on his behalf during trial, including specific evidence that the Solicitor-General of Effingham County, a business partner of both Cribbs, Sr. and Junior, had some motive to commit the murders. To prevail on his

---

[2] Compare *Wilson v. State*, 275 Ga. 53 (2) (562 SE2d 164) (2002) (18 hours between interviews regarding same crime not significant where initial invocation of right to silence was not scrupulously honored).

ineffectiveness claim, Griffin must establish that his counsel's performance was deficient and that the deficiency prejudiced his defense. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

The record shows that Griffin's trial counsel testified at the motion for new trial hearing that, as discussed with Griffin and agreed to by him, it was his strategy to not put up evidence in order to preserve his right to closing argument. With regard to Griffin's accusations against the Solicitor-General, Griffin's trial counsel more specifically testified that he did not present any evidence about this matter for two strategic reasons: (1) he wanted to preserve his right to make the closing argument to the jury; and (2) he believed that it would not be productive to attempt to blame an elected official on the basis of weak evidence and supposition. These tactical decisions fall within the bounds of reasonable professional conduct, and the trial court properly determined that Griffin had not received ineffective assistance of counsel. See *Harris v. State*, 274 Ga. 422 (9) (554 SE2d 458) (2001).

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 26, 2006.

*Caleb B. Banks*, for appellant.

*Richard A. Mallard, District Attorney, Keith A. McIntyre, Assistant District Attorney, Thurbert E. Baker, Attorney General, Laura D'Ann Dyes, Assistant Attorney General*, for appellee.