## S08A1363. SULLIVAN v. THE STATE.
(667 SE2d 32)

MELTON, Justice.

Following a jury trial, James Vincent Sullivan ("Defendant") appeals his conviction for the murder of his wife, Lita McClinton Sullivan ("Wife"), contending, among other things, that the evidence was insufficient to support the verdict.[1] We affirm.

In the light most favorable to the verdict, the record shows that, in August 1985, Wife filed for divorce from Defendant. The ensuing negotiations were extremely contentious, especially with regard to the validity of a postnuptial agreement between the parties. The final divorce hearing was scheduled for January 16, 1987. On the morning of that day, however, an assailant disguised as a flower delivery person shot and killed Wife when she opened the door to the couple's Atlanta townhouse where she resided. Defendant was living in the couple's Florida residence at the time.

Due to a lack of evidence, Defendant was not charged with the murder until 1998, after Belinda Trahan came forward. Trahan testified that her ex-boyfriend, Anthony Harwood, had previously worked for a moving company and delivered furniture to Defendant's home in Florida during November of 1986. Harwood told Trahan that Defendant had propositioned him to "take out his wife" because she was causing trouble in the divorce proceedings. Later, after a trip from North Carolina to Georgia in January of 1987, Harwood told Trahan that the job had been completed. Harwood and Trahan then traveled to a restaurant in Florida where Defendant, who was later identified by Trahan in a photo lineup, surreptitiously paid Harwood for committing the murder. After Trahan came forward, police then went to Harwood's home in North Carolina.

---

[1] Sullivan was indicted on June 26, 1998 for malice murder, felony murder, two counts of aggravated assault, and burglary. The State sought the death penalty. Following a jury trial, Sullivan was convicted on all counts, and, after a bifurcated sentencing hearing, the jury rejected the death penalty and recommended life imprisonment without the possibility of parole. On March 14, 2006, Sullivan was sentenced by the trial court to life imprisonment without the possibility of parole for malice murder, 20 consecutive years for one count of aggravated assault, and an additional 20 consecutive years for burglary. The conviction for felony murder was vacated by operation of law, see *Malcolm v. State,* 263 Ga. 369 (4) (434 SE2d 479) (1993), and the trial court merged the second count of aggravated assault into the first for purposes of sentencing. Sullivan filed a motion for new trial on March 20, 2006, which was amended on July 14, 2006, and denied on August 30, 2006. Sullivan's notice of appeal was filed on September 5, 2006, and his case was docketed in this Court on April 29, 2008, and orally argued on September 9, 2008.

Harwood later confessed to the crime.

Harwood pled guilty to voluntary manslaughter in 2003. At Defendant's trial, Harwood testified that, on November 24, 1986, he met Defendant while delivering furniture to his Florida home. While there, Defendant propositioned Harwood to "take care" of his wife in exchange for $25,000, half to be paid in advance. On January 13, 1987, Harwood stated that he and his friends John and Tracey traveled to Atlanta and knocked on Wife's door at 5:30 a.m., but no one answered. That same morning, Defendant called Bob Christenson, his company's former lawyer and neighbor of the Atlanta townhouse, to inquire whether he had seen anything strange around Wife's house or the neighborhood. Christenson characterized this contact as odd because he had not talked to Defendant in years. After a brief stay at a local Howard Johnson Motel, Harwood drove back to North Carolina. Harwood testified that Defendant suggested to him that he should use flowers to entice Wife to come to her door. Harwood next returned to Atlanta with John again on January 15, 1987, and, on the morning of January 16, 1987, Harwood stopped at a flower shop and gave John money to purchase roses. Harwood then drove to Wife's home, and John took the flowers to the front door and rang the bell. John then shot Wife when she answered the door, and the flowers were left on the doorstep. The florist from whom the flowers were purchased identified the roses.

After the first murder attempt, Harwood and his friend stayed in room 518 of a Howard Johnson Motel near Wife's home. Phone records show that, at 7:45 a.m. (approximately two hours after the first murder attempt), a call was made from room 518 to Defendant's Florida home. At 10:33 a.m. that morning, a call was made from Defendant's home to the Howard Johnson Motel. After the murder on January 16, 1987, Harwood stopped at a rest stop in Suwanee on his way back to North Carolina, called Defendant, and told him, "Merry Christmas." Defendant replied that he understood what that meant. Phone records confirm that this call was made.

Other information showed that Defendant had additional motive to murder Wife because, at the time of her death, Defendant was trying to refinance a balloon mortgage due on his Florida home. The bank informed Defendant that he could not refinance the loan without Wife's signature, but the bank provided Defendant with a commitment letter dated January 14, 1987. Within approximately a week of Wife's death, Defendant called the bank and told them that he could now complete the refinancing.

After hearing of Harwood's arrest, Defendant, who was living in Costa Rica at the time, fled to Thailand. Defendant was finally extradited to the United States in 2004. On March 14, 2006, a jury

found him guilty of murder. Although the State sought the death penalty, the jury recommended a sentence of life without parole.

1. This evidence was sufficient to enable the jury to determine that Defendant was guilty of the crimes for which he was convicted beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Griffin v. State*, 280 Ga. 683 (631 SE2d 671) (2006) (evidence sufficient to find aggravating circumstances under OCGA § 17-10-30 (b)). Although Defendant contends that some of the witnesses were not credible and some of the testimony was conflicting, this result does not change, as it is the duty of the trier of fact, not this Court, to determine the credibility of the witnesses and to resolve any conflicts in the evidence. See, e.g., *Curinton v. State*, 283 Ga. 226 (657 SE2d 824) (2008).

2. Defendant contends that the trial court erred in denying his motion to suppress all evidence taken from his Florida home, arguing that the affidavit filed in support of the search warrant authorizing the seizure contained material misrepresentations and failed to provide probable cause to search.

The record shows that a search warrant was issued to search Defendant's Florida home for diaries, financial records, and address books. In support of the warrant request, an affidavit was submitted detailing what police knew about the murder at the time. Defendant takes issue with this affidavit, contending that it contains many misleading facts and falsehoods. After the motion to suppress hearing, the trial court agreed with a number of Defendant's contentions, most notably finding that all information in the affidavit gathered from a certain confidential informant had to be excised because that informant's lack of reliability had not been properly disclosed to the magistrate. Nonetheless, given the information in the affidavit concerning the Defendant's pending divorce, phone calls to and from the Defendant around the time of the murder, and information that Defendant kept detailed diaries of his daily appointments at his Florida home, the trial court found that the reconstituted affidavit provided probable cause to issue the warrant.

> A search warrant will only issue upon facts "sufficient to show probable cause that a crime is being committed or has been committed." OCGA § 17-5-21 (a). The magistrate's task in determining if probable cause exists to issue a search warrant is "simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v.*

*Stephens*, 252 Ga. 181, 182 (311 SE2d 823) (1984). Our duty in reviewing the magistrate's decision in this case is to determine if the magistrate had a "substantial basis" for concluding that probable cause existed to issue the search warrants. *Grier v. State*, 266 Ga. 170, 172 (465 SE2d 655) (1996). A magistrate's decision to issue a search warrant based on a finding of probable cause is entitled to substantial deference by a reviewing court." *McClain* [*v. State*, 267 Ga. 378, 388 (477 SE2d 814) (1996)].

*DeYoung v. State*, 268 Ga. 780, 786 (7) (493 SE2d 157) (1997).

If a court determines that an affidavit submitted contains material misrepresentations or omissions, the false statements must be deleted, the omitted truthful material must be included, and the affidavit must be reexamined to determine whether probable cause exists to issue a warrant.

(Citation and punctuation omitted.) *Carter v. State*, 283 Ga. 76, 77 (2) (656 SE2d 524) (2008). Even doubtful cases should be resolved in favor of upholding a magistrate's determination that a warrant is proper. See *Davis v. State*, 266 Ga. 212, 213 (465 SE2d 438) (1996).

The record shows that the warrant in question granted the right to search Defendant's Florida home for diaries and calendars. At the suppression hearing, the trial court heard extensive argument regarding the contents of the affidavit supporting the warrant. After this hearing, the trial court balanced all of the information that had been presented and held that certain material had to be excised, most notably all information provided by an unreliable confidential informant, and certain other material provided by Defendant had to be added to the facts in the affidavit. The trial court then reexamined all of the information and determined that the reconstituted affidavit still supported the grant of the search warrant. After reviewing the record, we find that the trial court did not err in making this determination. *Carter*, supra. Moreover, even if the trial court had erred in denying Defendant's motion to suppress, Defendant has made no attempt to show that he was ultimately harmed in any way. The only evidence presented at trial which was recovered pursuant to the search warrant in question was comprised of: (1) pages from Defendant's calendars duplicating other admissible evidence that Harwood delivered furniture to and met Defendant in November 1986; (2) other pages from the calendars which simply showed that Defendant had made appointments with acquaintances unrelated to the murder around and on the date that the murder occurred; and (3) financial documents relating to the balloon mortgage on Defen-

dant's Florida home. Given the nature of these documents which largely duplicated other admissible testimony, Defendant was not harmed by their inclusion during trial. See, e.g., *Villegas v. State*, 273 Ga. 824 (5) (546 SE2d 504) (2001); *Soto v. State*, 252 Ga. 164 (1) (312 SE2d 306) (1984).

3. Defendant contends that the trial court erred by both failing to excuse four potential jurors and by failing to seat three different jurors, all with regard to these jurors' views and biases regarding sentencing options. Defendant's contentions, however, are either moot or without merit.

> The proper standard for determining the disqualification of a prospective juror based upon his views on capital punishment is whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath. As a general proposition, a prospective juror is not disqualified because he or she is leaning for or against a death sentence or another possible sentence, but he or she is disqualified if possessed with an unwavering bias in favor of or against one of the possible sentences authorized by law, such that [he or she] could not meaningfully consider one of the three possible sentences as a verdict. On appeal, our inquiry is [to determine] whether the trial court's qualification or disqualification of the prospective juror is supported by the record as a whole. An appellate court must pay deference to the finding of the trial court; this deference includes the trial court's resolution of any equivocations or conflicts in the prospective juror's responses on voir dire. Whether to strike a juror for cause is within the discretion of the trial court and the trial court's rulings are proper absent some manifest abuse of discretion.

(Punctuation and footnotes omitted.) *Lewis v. State*, 279 Ga. 756, 760 (3) (a) (620 SE2d 778) (2005).

Defendant argues that four jurors were improperly excused due to their incapacity to consider all three sentencing options available to them, namely the death penalty, life without parole, and life with the possibility of parole. However, two of these jurors made clear and unambiguous statements on the record that they could not, under any circumstances, consider the imposition of the death penalty. The other two jurors expressly stated on the record that they would be unable to consider the punishment of life with the possibility of parole. Given that all of these potential jurors unambiguously rejected one of the sentencing options they would be required to

consider, the trial court did not abuse its discretion in excusing them. *Lewis*, supra.

Defendant also contends that the trial court erred by seating three other jurors, arguing that each of these jurors unambiguously indicated that he or she could not consider the sentencing option of life with the possibility of parole.[2] The record does not support this contention. Although some of these jurors demonstrated some ambiguity in their views on punishment, each one indicated that he or she could and would consider all sentencing options after hearing the evidence presented.[3] As it is the trial court's role to resolve any equivocation in the jurors' voir dire testimony, there was no manifest abuse of discretion in this case. *Lewis*, supra.

4. Defendant contends that the trial court erred by refusing to give his requested charge on voluntary manslaughter. We disagree. No evidence in this case supports the Defendant's request. At the time of the murder, Defendant and his wife had already been going through a divorce for over a year. The evidence showed that the murder was the result of a carefully planned hit over a long period of time, not a "sudden, violent, and irresistible passion." OCGA § 16-5-2 (a). As a result, Defendant was not entitled to a charge on voluntary manslaughter. *Taylor v. State*, 282 Ga. 502 (2) (651 SE2d 715) (2007).

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 22, 2008.

*Garland, Samuel & Loeb, Edward T. M. Garland, Donald F. Samuel*, for appellant.

*Paul L. Howard, Jr., District Attorney, Anna G. Cross, Bettieanne C. Hart, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Mary N. Kimmey, Assistant Attorney General*, for appellee.

---

[2] We note that, in his brief Defendant purports to argue about four jurors. A review of Defendant's arguments and citations to the record, however, reveals that Defendant has mistakenly raised contentions about a single juror two times. Therefore, Defendant actually argues about only three jurors.

[3] Moreover, because Defendant did not, in fact, receive the death penalty, to the extent that he raises arguments based on *Witherspoon v. Illinois*, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (1968), these arguments are moot. See, e.g., *Hinely v. State*, 275 Ga. 777 (4) (573 SE2d 66) (2002).