**SECOND DIVISION**
**MILLER, P. J.,**
**ANDREWS and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 11, 2018**

# In the Court of Appeals of Georgia

A18A0069. IN THE INTEREST OF R. P., A CHILD

ANDREWS, Judge.

A delinquent petition filed in the Juvenile Court alleged that R. P. (the child) committed delinquent acts of theft by receiving stolen property and obstruction of a law enforcement officer. Prior to adjudication, the Juvenile Court considered pursuant to *Jackson v. Denno*, 378 U.S. 368 (84 SCt 1774, 12 LE2d 908) (1964) whether statements made by the child during custodial interrogation were voluntary and admissible in evidence. The Court ruled that statements made by the child, which supported allegations in the petition, were inadmissible as evidence because they were not voluntary and were made in violation of the child's right to remain silent under *Miranda v. Arizona*, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

Pursuant to OCGA § 5-7-1 (a) (4), the State appeals from the order excluding the evidence. For the reasons that follow, we reverse.

The video recording of the police detective's custodial interrogation of the thirteen-year-old child provided uncontradicted proof of the relevant facts. After viewing the video, the Juvenile Court found the following facts: The police detective read the child his rights under *Miranda* (including the right to remain silent), and then asked the child, "Understanding what I just told you, do you want to speak to me?" The child responded, "No." The detective then said, "No? You said no, right?" And the child immediately responded, "Yeah, I'll speak to you." The video shows that, after the child said, "Yeah, I'll speak to you," the detective continued the interview by questioning the child, and the child made the statements at issue. On these facts, the Juvenile Court ruled that the child asserted his *Miranda* right to remain silent by saying "No," and that the detective's duty to "scrupulously honor" the assertion of this right required that the interview be immediately terminated at that point. Accordingly, the Juvenile Court found that any statements made by the child after saying "No" were involuntary and inadmissible.

> Whether a defendant waives his rights under *Miranda v. Arizona*, [supra], and makes a voluntary and knowing statement depends on the totality of the circumstances. In ruling on the admissibility of an

2

in-custody statement [pursuant to *Jackson v. Denno*, supra,] a trial court must determine whether a preponderance of the evidence demonstrates that the statement was made freely and voluntarily. Unless clearly erroneous, we accept the trial court's factual findings and credibility determinations relating to the admissibility of the defendant's statement. When controlling facts discernible from a videotape are not disputed, our standard of review is de novo.

*Bunnell v. State*, 292 Ga. 253, 255 (735 SE2d 281) (2013) (citations and punctuation omitted); *Humphreys v. State*, 287 Ga. 63, 72-73 (694 SE2d 316) (2010).[1]

"Once [*Miranda*] warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Miranda*, 384 U.S. at 473-474. As the Supreme Court has noted, the passage "the interrogation must cease"

---

[1] When the statements at issue are made by a juvenile, to determine admissibility pursuant to *Jackson v. Denno*, supra, the same basic test applies – whether, under the totality of the circumstances, the statements were voluntarily made after a knowing and voluntary waiver of constitutional rights. *McKoon v. State*, 266 Ga. 149, 150 (465 SE2d 272) (1996). But in applying the test to an accused juvenile, the court considers the following additional factors: "the age of the accused; the education of the accused; the knowledge of the accused as to the substance of the charge and nature of his rights to consult with an attorney; whether the accused was held incommunicado or allowed to consult with relatives or an attorney; whether the accused was interrogated before or after formal charges had been filed; methods used in interrogation; length of interrogation; whether the accused refused to voluntarily give statements on prior occasions; and whether the accused repudiated an extrajudicial statement at a later date." Id. at 150 (citation and punctuation omitted). The consideration of these additional factors is not at issue in this appeal.

3

could be literally interpreted to mean that "any statement taken after the person invokes his privilege [to remain silent] would mandate exclusion of the statement from evidence "even if it were volunteered by the person in custody without any further interrogation whatever." *Michigan v. Mosley*, 423 U.S. 96, 101-102 (96 SCt 321, 46 LE2d 313) (1975). To avoid "absurd and unintended results" from a literal interpretation of the language used in *Miranda,* the Supreme Court explained that

> a blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogation, regardless of the circumstances, would transform the *Miranda* safeguards into wholly irrational obstacles to legitimate police investigative activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interests. Clearly, therefore, neither this passage nor any other passage in the *Miranda* opinion can sensibly be read to create a per se proscription of indefinite duration upon any further questioning by any police officer on any subject, once the person in custody has indicated a desire to remain silent.

*Mosley*, 423 U.S. at 102-103. Rather, "the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored'[by law enforcement authorities.]" *Mosley*, 423 U.S. at 104; *Miranda*, 384 U.S. at 474, 479; *Mack v. State*, 296 Ga. 239, 243 (765 SE2d 896) (2014).

4

The child clearly invoked the *Miranda* right to remain silent by responding "No" when the detective asked him if he wished to speak. The detective then immediately stated, "No? You said no, right?" to which the child immediately responded, "Yeah, I'll speak to you." When the child responded, "Yeah, I'll speak to you," this was an equally clear statement that he changed his mind, waived the right to remain silent, and was willing to answer the detective's questions. The detective's statement, "No? You said no, right?" cannot be reasonably construed as a failure to "scrupulously honor" the child's initial assertion of the right to remain silent and to "cut off questioning." Rather, "No? You said no, right?" was a leading question by the detective designed to elicit a confirmation from the child that he had asserted the right to remain silent and cut off questioning. The detective's statement was not questioning or interrogation in this context because it was not "express questioning or its functional equivalent" by "any words or actions on the part of police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 300-301 (100 SCt 1682, 64 LE2d 297) (1980). Moreover, the detective was not attempting, subtly or otherwise, to coerce or badger the child into changing his mind about his initial assertion of the right to remain silent. *State v.*

5

*Brown*, 287 Ga. 473, 477-480 (697 SE2d 192) (2010). There was no constitutional rule requiring the detective to immediately leave the child's presence after he initially asserted the right to remain silent. Id. at 478-480. Accordingly, "this is not a case . . . where the police failed to honor a decision of a person in custody to cut off questioning, either by refusing to discontinue the interrogation upon request or by persisting in repeated efforts to wear down his resistance and make him change his mind." *Mosley*, 423 U.S. at 105-106.

The facts show that, after the child was advised of his *Miranda* rights, he expressed an initial intention to remain silent and cut off any questioning, then, prior to any questioning or interrogation by the detective, immediately changed his mind and initiated communications by "clearly evincing his intent not to remain silent." *Larry v. State*, 266 Ga. 284, 286 (466 SE2d 850) (1996). The totality of the circumstances show that the State established by a preponderance of the evidence that the child's statements were made voluntarily after a knowing and voluntary waiver of *Miranda* rights. The Juvenile Court erred by excluding the statements from evidence.

*Judgment reversed. Miller, P. J., and Brown, J., concur*.

6