### A03A0036. POWERS v. THE STATE.
(582 SE2d 237)

ELLINGTON, Judge.

A Putnam County jury convicted James David Powers of possession of methamphetamine and marijuana, OCGA § 16-13-30; obstruction of a police officer, OCGA § 16-10-24; and operation of an unregistered vehicle, OCGA § 40-2-8. He appeals from the denial of

---

[1] 253 Ga. App. 212 (558 SE2d 409) (2002).
[2] 276 Ga. 298 (578 SE2d 409) (2003).

his motion for new trial, claiming that the trial court erred when it denied his motion to suppress the evidence gathered during a traffic stop pursuant to a roadblock and during a subsequent search of his home. Finding no error, we affirm.

The standard of review for each of Powers' four enumerated errors is the same. "A trial court's order on a motion to suppress will not be disturbed if there is any evidence to support it, and the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous." (Citation and punctuation omitted.) *McBride v. State*, 246 Ga. App. 151, 152 (539 SE2d 201) (2000). We construe all evidence presented in favor of the trial court's findings and judgment. *Loney v. State*, 245 Ga. App. 376, 377 (537 SE2d 780) (2000). Viewed in this light, the evidence presented at the hearing on Powers' motion to suppress showed that, on the afternoon of December 4, 1999, members of the Putnam County Sheriff's Office and the U. S. Forest Service conducted a roadblock to check for impaired drivers, as well as to check driver's licenses, tags, and insurance cards.[1] At approximately 2:25 p.m., Powers approached the roadblock in his dump truck. An officer noticed that Powers' truck had an expired tag, and instructed Powers to pull his truck over to the shoulder of the road. Upon approaching Powers, the officer smelled a strong odor of alcohol on Powers' breath. While the officer worked on the expired tag citation, a Forest Service agent approached Powers' truck. The Forest Service agent observed a rifle on the seat and asked Powers to step out of the truck. The agent also smelled a strong odor of alcohol coming from Powers. The agent asked Powers if he had been drinking, and Powers stated that he had had one beer. Powers agreed to take a field sobriety test, and the agent performed a horizontal gaze nystagmus (HGN) test. Powers failed the HGN test, but, based upon his experience, the agent believed Powers was impaired by drugs, not alcohol. The agent asked Powers whether he had taken any drugs, and Powers said he had taken an over-the-counter cold medication.

Before the first officer finished processing the citation for an expired tag, the Forest Service agent asked for and received Powers' consent to search him and his truck. Powers began emptying his pockets and placed a small bag of marijuana in the agent's hat. Powers also dropped on the ground a section of straw on which there was a white powdery residue.[2] The agent noticed a bulge in Powers' pants

---

[1] The U. S. Forest Service was involved because the roadblock was on federal land. But see OCGA §§ 50-2-22; 50-2-23 (the state retains civil and criminal jurisdiction over persons in territories that have been acquired by the United States for government use).

[2] Subsequent testing of the residue on the straw showed that it was methamphetamine.

pocket and asked him what it was. The agent started to pat it down, but Powers pushed him backward and ran into the nearby woods. As an officer pursued Powers, he saw Powers take something from a pocket and throw it to the ground. The officer caught Powers and arrested him for possession of marijuana and obstruction of an officer. Officers searched for but could not find the discarded item. During the subsequent search of the dump truck, officers discovered additional marijuana pushed down behind the seat.

After the arrest, a Putnam County detective arrived at the scene and asked Powers for permission to search his home. Powers refused, saying that his parents lived with him and he did not want to "put them through" a search. The detective knew, however, that Powers' parents lived at a different address. The detective conducted a criminal records background check, which revealed that Powers was a convicted felon.[3]

After officers transported Powers to jail, the detective prepared an affidavit and secured a search warrant for Powers' home. Officers went to Powers' home at approximately 6:00 p.m. on the evening of Powers' arrest. The officers talked with Powers' live-in girlfriend. She told the officers that, except for a small amount of marijuana in her jewelry box, the drugs in the home belonged to Powers.[4] The officers found several firearms, marijuana, a pipe for smoking drugs, and small amounts of methamphetamine.

Prior to trial, Powers filed a motion to suppress the evidence resulting from his stop at the roadblock and from the search of his home. The trial court conducted a hearing and denied the motion. The case proceeded to trial, and the jury convicted him on all counts. He appeals from the denial of his motion for new trial, challenging only the denial of his motion to suppress.

1. Powers contends the roadblock was unconstitutional, arguing the officers gave conflicting testimony about the roadblock at the motion hearing. Powers also argues that the true purpose of the roadblock was to detect evidence of ordinary criminal wrongdoing. Both of these assertions lack merit.

The Supreme Court of Georgia addressed the constitutionality of the type of roadblock utilized in this case in *LaFontaine v. State*, 269

---

[3] The detective's description of Powers as a convicted felon was based upon a Georgia Crime Information Center report that his first offender status from a previous offense had been revoked and that Powers had served time in prison after the revocation. When the detective was able to confirm Powers' criminal history two days after this arrest, however, there was no record of the revocation of his first offender status.

[4] Powers' girlfriend was charged with possession of less than an ounce of marijuana. She testified at Powers' trial. She is not a party to this appeal.

Ga. 251, 252-253 (3) (497 SE2d 367) (1998). In *LaFontaine*, the Court held as follows:

> It has been held that police officials may set up highway roadblocks for the purpose of requiring motorists to display their driver's license, and that such a practice does not invade their right to use the public ways free from unreasonable and unwarranted interception. Nor does such a practice constitute an unlawful arrest or restraint or an illegal search contrary to the United States Constitution. The State can practice preventative therapy by reasonable road checks to ascertain whether man and machine meet the legislative determination of fitness. Although a roadblock cannot be used as a subterfuge to detain citizens for the purpose of searching their automobiles, a momentary stop of a traveling citizen to perform the license checks or to check the present fitness of a car or driver for further driving is permissible. Roadblock stops have appreciably less intrusion on the part of travelers and do not create the fear and surprise engendered in motorists by roving patrol stops because the motorist is not singled out; the traveler is reassured when all vehicles are stopped. [Accordingly, a] roadblock is satisfactory where the decision to implement the roadblock was made by supervisory personnel rather than the officers in the field; all vehicles are stopped as opposed to random vehicle stops; the delay to motorists is minimal; the roadblock operation is well identified as a police checkpoint; and the "screening" officer's training and experience [are] sufficient to qualify him to make an initial determination as to which motorists should be given field tests for intoxication.

(Citations and punctuation omitted.) Id. However, the four *LaFontaine* factors are "not absolute criteria which must be satisfied before a roadblock is legitimate. Rather, this Court looks to the totality of the circumstances surrounding the roadblock to determine whether the factors were satisfied." (Citation and punctuation omitted.) *Loney v. State*, 245 Ga. App. at 376.

(a) Construing the evidence presented in this case in favor of the trial court's ruling,[5] the record shows that a supervising officer authorized the roadblock prior to December 4, 1999, and was present while the roadblock was conducted. Screening officers, trained and certified in the detection of impaired drivers, were present.[6] The

---

[5] *Loney v. State*, 245 Ga. App. at 377.

[6] See *State v. Sherrill*, 247 Ga. App. 708, 711 (2) (545 SE2d 110) (2001) (a screening officer only needs to be "sufficiently trained to enable him to make a determination as to

officers clearly marked the roadblock, parking their vehicles on both sides of the road with lights activated. Officers stopped every car and checked for a valid driver's license, tag, and proof of insurance. There was no evidence that officers at the roadblock had unfettered discretion or stopped individual drivers in an arbitrary or oppressive manner. See *Loney v. State*, 245 Ga. App. at 376 (*LaFontaine* factors help to ensure roadblocks are not used in an arbitrary or oppressive scheme to detain certain citizens for improper searches). Therefore, based upon the totality of the evidence presented, we find the roadblock in this case was constitutionally valid under *LaFontaine*.

(b) Powers also claims that the roadblock was a mere subterfuge and that its actual purpose was to impermissibly look for "ordinary criminal wrongdoing." See *City of Indianapolis v. Edmond*, 531 U. S. 32, 44 (III) (121 SC 447, 148 LE2d 333) (2000) (police officers cannot use a road checkpoint to interrogate and search travelers in the hope of discovering criminal behavior). Powers attempts to back up this claim in his brief by implying, without citation to the record, that the officers ran a criminal background check on him when they saw the rifle in the front seat of his truck. The undisputed evidence showed, however, that the officers did not run a criminal background check on Powers until *after* he was arrested for marijuana possession and obstruction of a police officer, which occurred *after* he produced a packet of marijuana during the consensual search and *after* he attempted to run from the officers. Powers' argument lacks merit.

Accordingly, the trial court did not err in denying Powers' motion to suppress on the basis that the roadblock was unconstitutional.

2. Powers contends the Forest Service agent lacked a reasonable suspicion of criminal activity sufficient to detain him for further investigation after the first officer finished citing him for an expired tag. The record, however, shows otherwise.

It is undisputed that, due to Powers' expired tag, the officers had the reasonable and articulable suspicion necessary to justify a brief detention after stopping him at the roadblock.[7] In order to justify additional questioning following the completion of the original investigation, the officers must have either the person's consent to further questioning or a reasonable suspicion that a separate offense has occurred. *Simmons v. State*, 223 Ga. App. 781, 782 (2) (479 SE2d 123) (1996). "Only if the officer continues to detain the subject after the conclusion of the traffic stop and interrogates him or seeks consent to

---

which motorists should be asked to take the field sobriety tests") (citation and punctuation omitted).

[7] See *Whren v. United States*, 517 U. S. 806, 810 (II) (116 SC 1769, 135 LE2d 89) (1996) (the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred).

search without reasonable suspicion of criminal activity does the officer exceed the scope of a permissible investigation of the initial traffic stop." (Punctuation, footnote and emphasis omitted.) *Henderson v. State,* 250 Ga. App. 278, 280 (551 SE2d 400) (2001).

The record in this case shows that, while the first officer was still working on the tag citation, the Forest Service agent observed a weapon in the truck, noticed Powers' extreme nervousness, detected the odor of alcohol on Powers, performed an HGN test with Powers' permission, determined that Powers appeared to be under the influence of drugs, and obtained Powers' consent to a search.[8] The agent's investigation "in no way delayed, extended, prolonged, or interrupted [the other officer's] writing of the citation." *Henderson v. State,* 250 Ga. App. at 279. By the time the officer completed the initial traffic citation, the Forest Service agent already had the reasonable suspicion of criminal activity necessary to continue his investigative detention of Powers and had obtained Powers' consent to a search. Id.; cf. *Berry v. State,* 248 Ga. App. 874, 881 (4) (547 SE2d 664) (2001) (videotape of traffic stop clearly showed that original investigation of a tag violation had been abandoned by the time the officer initiated additional questioning and the search of defendant's car); *Simmons v. State,* 223 Ga. App. at 782 (2) (accord). There was no error.

3. Powers contends he was illegally detained after he attempted to run from police officers. This contention is entirely without merit. The officers arrested Powers after he removed a packet of marijuana and a straw with white powdery residue from his clothing during a consensual search, and then pushed an officer and attempted to run from the scene. His detention after his arrest was clearly justified.

4. Powers contends the trial court erred in denying his motion to suppress on the basis that the affidavit supporting the search warrant executed on his home was insufficient to show probable cause. We disagree.

In determining the sufficiency of an affidavit to support the issuance of a search warrant, this Court utilizes the following totality of the circumstances test as outlined by the United States Supreme Court in *Illinois v. Gates,* 462 U. S. 213, 238-239 (III) (103 SC 2317, 76 LE2d 527) (1983). *State v. Stephens,* 252 Ga. 181, 184 (311 SE2d 823) (1984); *York v. State,* 242 Ga. App. 281, 293 (7) (528 SE2d 823) (2000).

The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the

---

[8] Contrary to Powers' contentions on appeal, there was no evidence that the officer threatened or coerced Powers into consenting to the search.

> veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.

(Citation omitted.) *York v. State*, 242 Ga. App. at 293 (7). We review the contents of the affidavit in the light most favorable to uphold the ruling of the trial court. *State v. Wesson*, 237 Ga. App. 789, 790 (516 SE2d 826) (1999).

In this case, the Putnam County detective signed the affidavit which supported the search warrant. The affidavit recounted the details of Powers' arrest earlier in the day, and stated that the arresting officers discovered a firearm and suspected marijuana and methamphetamine during consensual searches. The detective stated that a criminal background check indicated Powers was a convicted felon, and that, following his arrest, Powers lied to the detective about where and with whom he lived. According to the affidavit, investigations by the Ocmulgee Drug Task Force, the Georgia Bureau of Investigation, and other law enforcement agencies had linked Powers with several individuals who had been convicted of drug-related offenses.[9] The detective also stated that the sheriff's office had received numerous complaints from concerned citizens and reports from confidential informants that Powers was involved in the use and sale of illegal drugs, including marijuana and cocaine. In fact, according to the affidavit, another Putnam County detective reported that she had known Powers most of her adult life and it was "common knowledge" within the community that Powers abused drugs, particularly marijuana and cocaine.[10]

Powers argues that the affidavit was insufficient because it failed to demonstrate the veracity of the concerned citizens and informants who provided information to the police. Powers relies solely on cases in which the supporting affidavits contained only information given to the police by unnamed confidential informants or anonymous tipsters.[11] These cases are clearly distinguishable because, as

---

[9] "Observations by fellow officers of government engaged in a common investigation are a reliable basis for a warrant applied for by one of their number. Further, information provided by police officers, arising out of an official investigation, may be used to establish probable cause for a search warrant." (Citations and punctuation omitted.) *York v. State*, 242 Ga. App. at 293 (7).

[10] See *Caffo v. State*, 247 Ga. 751, 755 (2) (c) (279 SE2d 678) (1981) (a magistrate may consider a police officer's knowledge of a suspect's reputation when deciding whether to issue a search warrant).

[11] See, e.g., *Fiallo v. State*, 240 Ga. App. 278 (523 SE2d 355) (1999); *State v. Wesson*, 237 Ga. App. at 789-790; *Pailette v. State*, 232 Ga. App. 274, 275 (501 SE2d 603) (1998); *Caswell*

shown above, the affidavit in this case provided significant additional information to demonstrate probable cause.

Further, "[t]here is no absolute requirement that a search warrant affiant state circumstances which demonstrate the reliability of the informant and his information. Those factors are highly relevant considerations, but the applicable test is based on the totality of the circumstances." (Footnote omitted.) *Dollar v. State*, 242 Ga. App. 511, 512 (1) (a) (529 SE2d 665) (2000). Although the affidavit in this case did not state specific facts to demonstrate the veracity of the informants and concerned citizens or the basis of their knowledge, the absence of significant information regarding reliability is not necessarily fatal to an affidavit. *Stewart v. State*, 217 Ga. App. 45, 47 (456 SE2d 693) (1995). Even without the information about the unnamed sources, the affidavit provided ample support for the magistrate's finding of probable cause under the totality of the circumstances test. See *Williams v. State*, 232 Ga. 213, 214 (1) (205 SE2d 859) (1974) (a factual inaccuracy does not destroy the integrity of an affidavit and may be excised by a reviewing court when determining the sufficiency of the affidavit). Accordingly, the trial court did not err in denying Powers' motion to suppress the results of the search of Powers' home.

*Judgment affirmed. Blackburn, P. J., and Phipps, J., concur.*

DECIDED MAY 16, 2003.

*Guy J. Notte*, for appellant.
*Fredric D. Bright, District Attorney, Richard M. Gailey, Jr., Assistant District Attorney*, for appellee.

*v. State*, 219 Ga. App. 787-788 (466 SE2d 907) (1996); *Wood v. State*, 214 Ga. App. 848-849 (1) (449 SE2d 308) (1994); *Langford v. State*, 213 Ga. App. 232, 233 (1) (444 SE2d 153) (1994); *Eaton v. State*, 210 Ga. App. 273 (1) (435 SE2d 756) (1993).
[1] 400 U. S. 25 (91 SC 160, 27 LE2d 162) (1970).
[2] A motion to withdraw a guilty plea is timely only if filed within the term of court in which the plea was entered. *Forrest v. State*, 251 Ga. App. 487, 488 (1) (554 SE2d 735)