**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**September 24, 2012**

# In the Court of Appeals of Georgia

A12A1116. WILLIAMS v. THE STATE.

RAY, Judge.

During the late night and early morning hours of November 27 and 28, 2010, officers with the Bibb County Highway Enforcement of Aggressive Traffic ("HEAT") unit established a roadblock to conduct sobriety checks. At approximately 2:00 a.m., the officers stopped a vehicle driven by James Williams. The officers observed that Williams appeared to be intoxicated, and they arrested him for driving under the influence of alcohol[1] and for violation of the open container law.[2] On appeal, Williams does not challenge the trial court's factual findings, but instead contends that the trial court erred in denying his motion to suppress evidence obtained at a

___

[1] See OCGA § 40-6-391 (a) (1).

[2] See OCGA § 40-6-253 (b) (1).

highway roadblock because he was stopped at a checkpoint implemented by a field officer rather than a supervisor acting at the programmatic level. For the reasons that follow, we affirm.

> In reviewing a trial court's denial of a motion to suppress, we construe the evidence most favorably to uphold the findings and judgment, and we review de novo the trial court's application of the law to the undisputed facts. Additionally, we adopt the trial court's findings on disputed facts and credibility unless they are clearly erroneous.[3]

Stopping a vehicle at a roadblock is a seizure that violates the Fourth Amendment unless that stop is deemed reasonable.[4] In general, such seizures are unreasonable absent an individualized suspicion of wrongdoing.[5] As a result,

> roving patrols in which officers exercise unfettered discretion to stop drivers in the absence of articulable suspicion are unconstitutional[,] but . . . standardized highway checkpoints or roadblocks that serve

---

[3] (Footnote omitted.) *Thompson v. State*, 289 Ga. App. 661 (658 SE2d 122) (2008).

[4] *City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (II), 40 (III) (121 SC 447, 148 LE2d 333) (2000).

[5] Id. at 37 (II).

2

legitimate law enforcement objectives are permissible under certain circumstances.[6]

A limited exception to the rule requiring individualized suspicion, however, allows standardized highway roadblocks if the State shows that supervisory officers implemented the roadblock "at the programmatic level for a legitimate primary purpose."[7] In addition, the Supreme Court of Georgia in *LaFontaine v. State*[8] outlined five criteria the State must show in order to justify a stop:

> the decision to implement the roadblock was made by supervisory personnel rather than the officers in the field; all vehicles are stopped as opposed to random vehicle stops; the delay to motorists is minimal; the roadblock operation is well identified as a police checkpoint; and the 'screening' officer's training and experience is sufficient to qualify him to make an initial determination as to which motorists should be given field tests for intoxication.[9]

---

[6] (Citation and punctuation omitted.) *Martin v. State*, 313 Ga. App. 226 (721 SE2d 180) (2011).

[7] (Citation and punctuation omitted.) *Thomas v. State*, 277 Ga. App. 88, 89 (625 SE2d 455) (2005). Accord *Edmond*, supra at 48 (III) (purpose inquiry is to be conducted at programmatic level, and is not for probing minds of individual officers acting at scene).

[8] *LaFontaine v. State*, 269 Ga. 251 (497 SE2d 367) (1998)

[9] (Citation omitted.) Id. at 253 (3).

Only the first of the *LaFontaine* factors is at issue here: whether the State demonstrated that "the decision to implement the roadblock was made by supervisory personnel rather than the officers in the field."[10] The *LaFontaine* criteria are the minimum prerequisites that must be met for a roadblock to be constitutional.[11] Only after these prerequisites are met do we apply a "totality of the circumstances" test to determine if the stop was reasonable under the Fourth Amendment.[12]

On appeal, Williams contends that the roadblock was unconstitutional because the State failed to show the following: that the decision to implement the roadblock was made by supervisory personnel; that supervisory personnel implemented the roadblock while acting at the programmatic level for a legitimate primary purpose; and that the roadblock was reasonable under the "totality of the circumstances."

Viewed appropriately, the evidence shows that the decision to implement the roadblock was made solely by Sergeant Bruce Jordan, a supervisory officer of the Bibb County HEAT unit, a state-funded patrol whose main purpose is conducting

---

[10] (Punctuation omitted.) Id.

[11] *Baker v. State*, 252 Ga. App. 695, 701 (1) (556 SE2d 892) (2001) (whole court).

[12] Id.

4

sobriety checks. Captain Henry Colbert, the HEAT unit's commanding officer, gave Jordan supervisory authority of the unit and its two field officers in 2009. Before delegating this authority, Colbert told Jordan his expectations for a proper roadblock, including the purposes for designating a roadblock and the expected method of supervision. Colbert also placed limits on when and where Jordan could conduct roadblocks and required him to have a specific reason for conducting the roadblocks. He did not limit the total number of roadblocks Jordan was authorized to conduct. Jordan frequently planned and helped conduct roadblocks. He was not required to seek prior input or approval from Colbert, nor was he required to report to Colbert after implementing the roadblocks. Unless the roadblocks involved officers outside of the HEAT unit, Jordan had no written guidelines detailing the requirements of each roadblock, nor did he keep written records.

Jordan testified that he implemented the roadblock at issue as a license and sobriety check, that he made the decision to do so at the start of his shift, and that about an hour prior to implementing the roadblock, he instructed two other officers to join him. When the officers needed to investigate multiple drivers simultaneously, Jordan participated directly in the investigations, including the investigation of Williams.

1. Williams first contends that the roadblock was unconstitutional because the State failed to show that the decision to implement the roadblock was made by a supervisor rather than by a field officer. Williams does not dispute Colbert's delegation of his authority to implement roadblocks to Jordan. Rather, he argues that Jordan failed to qualify as "supervisory personnel" because he participated directly in roadblocks, including the one at issue in the instant case.

Although *LaFontaine* provides that the decision to implement a roadblock should not come from "officers in the field," this Court has established that a supervisor may be defined by rank and by job duties that require him to "supervise[] . . . subordinates in the field, rather than from behind a desk."[13] Further, an officer may be a supervisor even if he or she screens a motorist at a roadblock.[14] In the instant case, Jordan was present to supervise the roadblock, but did not interact with motorists when traffic was light. When traffic backed up, however, he assisted his

---

[13] (Footnote omitted.) *Jacobs v. State*, 308 Ga. App. 117, 119 (706 SE2d 737) (2011).

[14] Id.

6

subordinates to minimize delay to the public. Such action does not deprive Jordan of supervisory status.[15]

Williams correctly notes that other decisions by this Court have looked with approval at the supervising officer's non-participation in a roadblock when determining whether an officer held a supervisory role.[16] However, neither this Court nor the Supreme Court of Georgia has held that the level of participation in a roadblock is a determinative factor in classifying an officer as a supervisor. Rather, "officers are not precluded as a matter of law from acting simultaneously as a supervisor and a field officer."[17] A supervisory officer's participation in a roadblock

---

[15] See *Gonzalez v. State*, 289 Ga. App. 549, 551 (657 SE2d 617) (2008) (supervisory officer who occasionally participated in traffic stops when traffic backed up still was acting in supervisory role); *Hobbs v. State*, 260 Ga. App. 115, 117 (1) (579 SE2d 50) (2003) (upholding the supervisory role of an officer who ordered the roadblock and stopped defendant at the scene).

[16] See *Giacini v. State*, 281 SE2d 426, 428 (1) (636 SE2d 145) (2006) (mere presence at a roadblock does not deprive an officer of supervisory status if he is acting in a supervisory capacity); *Harwood v. State*, 262 Ga. App. 818, 820 (1) (a) (586 SE2d 722) (2003) (supervisor did not act as field officer by attending roadblock, where supervisor did not screen, search, or otherwise interact with motorists); *Ross v. State*, 257 Ga. App. 541, 542 (1) (573 SE2d 402) (2002) (officer present at the scene who had supervisory responsibilities acted as supervisor, not field officer, where he testified he was not there as a field officer).

[17] *State v. Brown*, 315 Ga. App. 154, 159 (1) (726 SE2d 654) (2012) (holding that an officer was acting in a supervisory capacity even though he simultaneously

does not automatically cause the roadblock to become an unreasonable seizure.[18] Jordan's participation in the roadblock and his service as a field officer did not disqualify him as a supervising officer, and Williams' argument on this point fails.

2. Williams also contends that the roadblock was not made for a legitimate primary purpose at the programmatic level because Jordan was authorized to conduct roadblocks without the influence of a detailed program, plan, or schedule from Colbert. The State has the burden of proving that a highway roadblock

> was implemented at the programmatic level for a legitimate primary purpose, i.e., proof that the roadblock was ordered by a supervisor and implemented to ensure roadway safety rather than as a constitutionally impermissible pretext aimed at discovering general evidence of ordinary crime.[19]

---

also was acting as checkpoint supervisor, screener, and follow-up investigator).

[18] See id. at 162 (Mikell, P.J., dissenting) ("In Georgia, it is in theory possible for a supervisor properly, as an executive, to order the roadblock and then later to participate in it").

[19] (Citation omitted.) *Hobbs*, supra at 116 (1).

Although Georgia's courts have yet to define precisely what it means for a decision to be rendered at the "programmatic level,"[20] this term must be examined in light of the United States Supreme Court's decision in *City of Indianapolis v. Edmond*.[21] This Court determined that *Edmond* requires proof of the valid purpose of a roadblock as a constitutional prerequisite to the admissibility of evidence seized at a roadblock.[22] Further, "*Edmond* now requires us to focus on the *primary purpose decreed by the supervisors . . .* what is required is 'an inquiry into purpose at the programmatic level.'"[23] In other words, at issue is whether "the decision to implement the checkpoint in question was made by supervisory officers in the field *and* [whether] the supervisors had a legitimate primary purpose."[24] Further, in the context of a supervisor who also serves as a field officer, the supervisor must have acted at

---

[20] See *Owens v. State*, 308 Ga. App. 374, 375 (1), n. 3 (707 SE2d 584) (2011).

[21] Supra.

[22] *Baker*, supra at 698 (1).

[23] (Emphasis supplied.) Id., citing *Edmond*, supra at 46 (III).

[24] (Emphasis in original.) *Baker*, supra at 702 (1). Further, the State must present some admissible testimonial or written evidence of the supervisor's purpose. Id. at 701 (1).

an executive programmatic level, as opposed to as a field officer, *at the time* he or she issued advance authorization for the roadblock.[25]

As we determined in Division 1, the evidence supports the trial court's finding that Jordan was acting in his duly authorized supervisory capacity when he authorized the roadblock, in advance of implementation, and that he authorized the roadblock for the legitimate primary purpose decreed by Colbert and the stated mission of the HEAT unit to establish a sobriety checkpoint. In a case with similar facts, we determined that a field supervisor who "did not obtain prior approval, either written or verbal, from her superiors"[26] to conduct the roadblock at issue still implemented the roadblock at the programmatic level for a legitimate primary purpose because she was carrying out her superiors' directive to conduct road safety checks.[27] Further, "[Jordan's] testimony that [he] was expressly authorized to plan and implement roadblocks, which was uncontradicted, is sufficient to establish [his supervisory authority], regardless of whether this delegation of authority was memorialized in a

---

[25] See *Brown*, supra.

[26] *Jacobs*, supra at 119.

[27] (Footnote omitted.) Id. at 119-120.

10

written manual or policy."[28] There is no evidence that Jordan's decision to implement the roadblock was made spontaneously in the field, or that the roadblock had the characteristics of a roving patrol.[29] Thus, Williams' argument must fail.

3. Finally, after an examination of the totality of the circumstances, including our discussions in Divisions 1 and 2, we are not persuaded that the roadblock was unreasonable under the Fourth Amendment. Although Williams alleges that Jordan had "unfettered and total discretion" to initiate roadblocks, Williams failed to present any evidence that the roadblocks placed an unreasonable burden on the citizens of Bibb County, or that the roadblock was arbitrary or oppressive.[30] As a result, the trial court did not err when it denied Williams' motion to suppress.

*Judgment affirmed. Miller, P. J., and Branch, J., concur.*

---

[28] (Footnote omitted.) *Jacobs*, supra at 120. But see *Thomas*, supra at 90-91 (roadblock unauthorized because corporal on patrol made decision to conduct roadblock "spontaneously," and no evidence was presented showing he had either specific authorization or implicit authority to implement roadblocks).

[29] *LaFontaine*, supra at 253 (3) (trial court did not err in denying motion to suppress evidence from roadblock where there was "no evidence of unfettered discretion" by officers screening motorists, no evidence that officers arbitrarily singled out defendant's vehicle, and no showing that roadblock was arbitrary or oppressive).

[30] *Powers v. State*, 261 Ga. App. 296, 299-300 (1) (a) (582 SE2d 237) (2003).