**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**October 29, 2014**

# In the Court of Appeals of Georgia

A14A1334. WILLIAMS v. THE STATE.

MCFADDEN, Judge.

Shepherd Walter Williams appeals the denial of his motion to suppress. He challenges the sufficiency of the affidavit supporting the search warrant authorizing use of a drug dog at the front door of his residence. He also challenges the subsequent affidavit – based in part on the drug dog's alert – supporting the warrant for the search of the residence itself. We find that the magistrate had a substantial basis for concluding that probable cause existed to issue both search warrants. We therefore affirm.

Our Supreme Court, in *State v. Palmer*, 285 Ga. 75 (673 SE2d 237) (2009), described the standards applicable to the various levels of judicial scrutiny involved in the warrant process as follows:

The magistrate's task in determining if probable cause exists to issue a search warrant is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

The trial court may then examine the issue as a first level of review, guided by the Fourth Amendment's strong preference for searches conducted pursuant to a warrant, and the principle that substantial deference must be accorded a magistrate's decision to issue a search warrant based on a finding of probable cause.

A deferential standard of review is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.

Our appellate courts will review the search warrant to determine the existence of probable cause using the totality of the circumstances analysis. . . . The duty of the appellate courts is to determine if the magistrate had a substantial basis for concluding that probable cause existed to issue the search warrant. . . . In reviewing the trial court's grant or denial of a motion to suppress, we apply the well-established principles that the trial court's findings as to disputed facts will be

upheld unless clearly erroneous and the trial court's application of the law to undisputed facts is subject to de novo review, keeping in mind that a magistrate's decision to issue a search warrant based on a finding of probable cause is entitled to substantial deference by a reviewing court.

Id. at 77-78 (citations and punctuation omitted).

Viewed with theses principles in mind, we turn to the search warrants that Williams challenges on appeal. The first warrant authorized the deployment of a drug-detecting dog at the front door of Williams' residence. (The United States Supreme Court has recently held that "using a drug-sniffing dog on a homeowner's porch to investigate the contents of the home is a 'search' within the meaning of the Fourth Amendment." *Florida v. Jardines*, __ U.S. __ (133 SCt 1409, 185 LE2d 495) (2013).) The warrant was supported by an affidavit describing the following circumstances:

The affiant, a sergeant with the Lowndes County Sheriff's Office, received information from an unidentified person that a black man known as "Shap" housed and distributed cocaine and marijuana from his residence at 4349 Bevel Creek Drive in Valdosta. The unidentified person also stated that "Shap" cooked cocaine there.

Over the course of the next month, officers drove by the residence multiple times, but never saw a vehicle. But on June 24, 2013, about a month after receiving the information from the unidentified person, two officers passed by the residence and saw a green Pontiac Grand Am with a certain tag number parked there. The car left the residence, and the officers followed. They conducted a traffic stop (apparently for a littering violation), and the sergeant who made the affidavit went to the stop. The driver was Octavia Kimberly Bryant, to whom the car was registered. Williams was seated in the back seat. Investigators were familiar with Williams from previous narcotics-related arrests and knew he used the nickname "Shep." The investigators and the sergeant smelled marijuana on Williams' breath and person. They searched the car and found marijuana residue. According to the sergeant's affidavit, Williams admitted that "he had recently smoked marijuana before getting into the car." Williams also told the officers that he was on felony probation. Williams told the officers that he and Bryant had come from their residence, but Williams and Bryant each gave different addresses, neither which matched the Bevel Creek Drive address from which the officers had seen them drive away. The officers issued a warning citation, and Williams and Bryant left the scene.

Another unidentified person reported that the Grand Am returned to the Bevel Creek Drive address two hours after the traffic stop; that the car was there regularly; that Williams lived at that address; and that an instance of unspecified "drug-related activity" had occurred there.

The sergeant drove by the residence the next morning and saw the Grand Am parked there. He checked an internet database and determined that the Bevel Creek Drive address was Bryant's most recent address. He also checked the call records of Lowndes County Dispatch and determined that Bryant had made a call from that address two months before. Based on this evidence, the sergeant concluded that Williams and Bryant lived at the Bevel Creek Drive location but were concealing their address. The sergeant knew that narcotics dealers often attempt to conceal their addresses.

The sergeant ran a criminal history check of Williams and determined that he had five felony convictions. His criminal history listed drug-related charges of purchase, possession, manufacture, distribution or sale of marijuana sometime in the 2000s (the last digit of the year was omitted from the affidavit); possession of marijuana with intent to distribute in 2001; possession of cocaine with intent to distribute in 2003; possession of marijuana in 2003; possession of marijuana in 2005;

5

possession of cocaine in 2005; three counts of sale of cocaine in 2006; and possession of cocaine in 2008. The history also listed obstruction and weapons charges.

Based on this affidavit, a magistrate signed a search warrant authorizing the sergeant "to use and deploy a certified narcotics K9 detection team on the front exterior door" of the Bevel Creek Drive residence. The police executed this warrant, and the dog indicated by his behavior that he smelled drugs. Based on the dog's alert as well as the information provided in the first affidavit, the sergeant sought a warrant to search the residence, and the magistrate issued the warrant.

Williams argues that the affidavit supporting the application for the warrant for the deployment of the drug dog at his residence was insufficient because it failed to demonstrate the veracity of the unnamed persons who provided information to the police. But the affidavit in this case provided significant additional information to demonstrate probable cause. That information included the fact that Williams was stopped after leaving the residence under surveillance, lied about where he had come from, a common tactic of narcotics dealers, and admitted that "he had recently smoked marijuana before getting into the car" and that he was a convicted felon. The officers found marijuana residue in the car, and they were familiar with Williams because of his previous narcotics-related arrests. Williams' criminal history showed

that he was a five-time convicted felon, and it listed drug-related charges, including charges based on the distribution of drugs. See *Caffo v. State*, 247 Ga. 751, 755 (2) (c) (279 SE2d 678) (1981) (magistrate may properly rely on policeman's knowledge of a suspect's reputation).

Given these other circumstances, any infirmity regarding the information from the unnamed persons was not fatal to the search warrant affidavit. *Powers v. State*, 261 Ga. App. 296, 302-303 (4) (582 SE2d 237) (2003). See also *Braun v. State*, 324 Ga. App. 242, (747 SE2d 872) (2013) (although information from tipster of unknown reliability was insufficient to justify no-knock provision in warrant, other circumstances, including the presence of drug residue in defendant's trash can and his prior arrest record were sufficient). Under these circumstances, the magistrate had a substantial basis for concluding that probable cause existed to issue the first search warrant. And those circumstances, plus the drug dog's alert and the sergeant's description of the dog's certification, established a substantial basis for concluding that probable cause existed to issue the second search warrant. *Rivera v. State*, 247 Ga. App. 713, 714 (1) (545 SE2d 105) (2001) ("Evidence that a dog has been trained and certified as a drug detection dog constitutes prima facie evidence of its reliability for purposes of a probable cause determination.") (citation omitted).

7

*Judgment affirmed. Andrews, P. J., and Ray, J., concur.*