**THIRD DIVISION
MILLER, P. J.,
MCFADDEN and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

June 23, 2016

# In the Court of Appeals of Georgia

A16A0559. JONES v. THE STATE.

MCMILLIAN, Judge.

Landry Brian Jones was convicted by a jury of possession of methamphetamine with intent to distribute, theft by receiving stolen property, and possession of a motor vehicle with identification number removed. Jones filed a motion and amended motions for new trial, which the trial court denied following a hearing. Jones appeals, arguing in related enumerations of error that the trial court erred by denying his motion to suppress evidence seized from his home during the execution of several search warrants. As more fully set forth below, we now affirm.

The evidence relevant to the searches is essentially undisputed. On May 23, 2004, at about 4:30 a.m., Jones was shot at his mobile home residence located at 154

Hightower Trail in Cherokee County.[1] Law enforcement personnel with the Cherokee County Sheriff's Department responded to the 911 call reporting the shooting, and Detective Steven Thompson, who at that time was employed in the sheriff's department's Violent Crime Unit, met Jones at the hospital while other officers proceeded to his residence. Thompson spoke with Jones, who had been shot in the left arm but was conscious when the detective arrived at the hospital, and received Jones' consent to search his home for evidence related to the shooting.

Officers conducting the initial search observed baggies, a propane tank and scales inside Jones' home, and coupled with information received while investigating the shooting, police formed the belief that Jones was involved in the drug trade, in particular the sale of methamphetamine. On June 1, 2004, Detective Thompson obtained a warrant to search Jones' home, outlying buildings, and curtilage for evidence of the shooting and the sale and distribution of methamphetamine, and a search was conducted pursuant to the warrant on June 2, 2004. During this second search, officers found a small amount of marijuana inside a drawer in the house and an outside shed and an ATV with a missing vehicle identification (VIN) number.

---

[1] The mobile home was located about 100 yards off the road on property of unknown acreage.

The ATV with the missing VIN number was subsequently determined to be stolen, and officers obtained a warrant for Jones' arrest for possession of stolen property and misdemeanor marijuana possession. Detective Thompson and another officer went to Jones' residence on June 11, 2004 to arrest him, and Jones exited from the rear door of his trailer and met the officers outside the mobile home. Jones asked the officers if they had a warrant, and they informed him that they did. After Jones was placed under arrest, he indicated that he wanted to secure his home and the officers escorted him back inside. The officers observed several people inside the home and detected the odor of burnt marijuana. Officers also observed a glass pipe and a propane torch on a table in the living area of the mobile home.

Detective Thompson then sought and obtained another warrant based on the smell of burnt marijuana and observation of the glass pipe "of the type . . . commonly used for smoking crack cocaine and [methamphetamine and the] cylinder of propane that is often used to heat the illegal substance to be smoked in the glass pipe."[2] This search warrant was executed June 11, 2004, the same day Jones was arrested. During

---

[2] Detective Thompson testified at the hearing on the motion to suppress that there was also an odor of propane burning inside the home, but he did not include this fact in the affidavit he subsequently submitted in support of the search warrant.

3

the execution of this warrant, police discovered, among other things, a substance subsequently identified as methamphetamine.

Jones was charged with possession of methamphetamine with intent to distribute, theft by receiving stolen property, and possession of a vehicle with identification number removed. Jones filed consolidated motions and discovery demands, including a broad, non-particularized motion to suppress, which he later amended to attack more particularly the June 1 and June 11 warrants. Following a hearing at which the trial court expressly cited, and discounted, many of the averments in the affidavit supporting the June 1 warrant, the trial court summarily denied the amended motions to suppress. Subsequently, Jones was tried before a jury and was found guilty on all counts. He filed a motion for new trial, in which he once again challenged the introduction of the evidence found during the execution of the June 1 and June 11 search warrants. The trial court denied Jones' motion, and Jones filed this appeal.

1. Jones first contends that the search of his residence and outlying buildings pursuant to the June 1 warrant was illegal because the affidavit submitted in support of the warrant was legally insufficient to support a finding of probable cause.

We begin our analysis by setting out the standards used in the various levels of judicial review of an application for a search warrant. At the outset, our law is clear that a magistrate may issue a search warrant only upon facts sufficient to support probable cause that a crime is being committed or has been committed. OCGA § 17-5-21 (a); *State v. Palmer*, 285 Ga. 75, 77 (673 SE2d 237) (2009).

> The magistrate's task in determining if probable cause exists to issue a search warrant is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [or her], including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. . . . *Sullivan v. State*, 284 Ga. 358, 361 (667 SE2d 32) (2008).

(Punctuation omitted.) *Prince v. State*, 295 Ga. 788, 792 (2) (a) (764 SE2d 362) (2014); *Palmer*, 285 Ga. at 78. "The test for probable cause is not a hypertechnical one to be employed by legal technicians, but is based on the factual and practical considerations of everyday life on which reasonable and prudent men act." (Citations and punctuation omitted.) *State v. Hunter*, 282 Ga. 278, 278 (646 SE2d 465) (2007).

When a trial court reviews a magistrate's decision to issue a search warrant on a motion to suppress, "the trial court may then examine the issue as a first level of review, guided by the Fourth Amendment's strong preference for searches conducted

5

pursuant to a warrant, and the principle that substantial deference must be accorded a magistrate's decision to issue a search warrant based on a finding of probable cause." (Citation omitted.) *Palmer*, 285 Ga. at 77. However, the burden of proving the lawfulness of the warrant is on the State, including the reliability of an informant if the application for the warrant is based upon information provided by an informant. *Sutton v. State*, 319 Ga. App. 597, 597-98 (737 SE2d 706) (2013); *Dearing v. State*, 233 Ga. App. 630, 632 (505 SE2d 485) (1998).

On appeal, we also review the search warrant to determine whether probable cause existed under the totality of the circumstances, keeping in mind that the duty of the appellate courts "is to determine if the magistrate had a 'substantial basis' for concluding that probable cause existed to issue the warrant[]." *Sullivan v. State*, 284 Ga. 358, 361 (2) (667 SE2d 32) (2008); *Powers v. State*, 261 Ga. App. 296, 302 (4) (582 SE2d 237) (2003). Moreover, we review the trial court's grant or denial of a motion to suppress under the well-established principles that the trial court's findings as to disputed facts will be upheld unless clearly erroneous and the trial court's application of the law to undisputed facts is subject to de novo review. *Petty v. State*, 283 Ga. 268, 269 (2) (658 SE2d 599) (2008). As in the trial court, we will give substantial deference to the magistrate's decision to issue a search warrant. *Palmer*,

285 Ga. at 77-78; *Sullivan*, 284 Ga. at 361 (2); *Robinson v. State*, 312 Ga. App. 736, 745 (4) (a) (719 SE2d 601) (2011).

With these principles in mind, we examine the affidavit submitted by Detective Thompson in support of the June 1 warrant. In regards to the shooting, Detective Thompson set out the information provided from the statements made by a witness and noted certain forensic evidence that officers found during the course of their investigation at Jones' residence, indicating that police believed they had not yet recovered all evidence related to the shooting, including the bullets fired and the weapon. Additionally, the affidavit recited that while processing the scene of the shooting, officers found "small plastic bags, commonly used in packaging of meth, large propane cylinders, commonly used in the smoking of meth, scales, commonly used in the weighing and packaging of meth." Officers also observed a room in the residence containing shelves around the walls of it supporting many electronic items, a motorcycle and four wheeler type vehicle in a shed, another four wheeler outside, and many tools, of the "type commonly stolen and exchanged for drugs," hanging on the walls of the building.[3] Further, the affidavit stated that officers observed that

---

[3] The trial court noted that the descriptions of the items in the shed did not support probable cause for the search because tools in general are commonly stolen.

Jones' residence was equipped with a surveillance camera, monitoring the outside of the residence and night vision equipment to survey the property. After hearing testimony from Thompson and the magistrate, the trial court credited these averments and although noting that the basis was marginal, nonetheless found that they were sufficient to support probable cause for the June 1 search.[4]

The trial court, however, discounted a number of averments in the affidavit as unsubstantiated rumor or because the averments were too vague to support a finding of probable cause, including that during the course of the investigation, Cherokee County law enforcement officers had spoken with Dawson County Sheriff's Investigator Tim Reed, who told them that he was "very familiar" with Jones, who Reed said "was known to sell methamphetamine and possess stolen property." Reed also provided information that Jones was under prosecution for the sale of methamphetamine without identifying when the underlying offense took place and that he was known to trade stolen property in exchange for drugs.

---

[4] Although the trial court did not make written findings, the court's oral findings on the record at the motion to suppress hearing provide a sufficient basis for appellate review such that remand is not necessary. See *Norton v. State*, 293 Ga. 332, 335 (2), n.4 (745 SE2d 630) (2013) (remand not necessary when written order, together with court's oral pronouncement, provides basis for sufficient and meaningful appellate review).

8

Thompson also averred that officers had determined the person responsible for the shooting from an informant in Buford, Georgia,[5] although only the first name and nicknames of the alleged shooter were included in the affidavit, and that the information had been independently verified by "an Investigator with the Dawson County Sheriff's Office." Additionally, the affidavit stated that "it was determined" that Jones was a regular purchaser of meth from the person identified as the shooter and that he owed this person a large sum of money without explaining who provided the information or how it was determined.

---

[5] The trial judge discounted the averments related to the informant, noting the informant had not been shown to be reliable and the information had not been corroborated. The recitations contained in the affidavit concerning the unverified and uncorroborated assertions of the unnamed informant were properly disregarded by the trial court. *State v. LeJeune*, 276 Ga. 179, 181 (1) (576 SE2d 181) (1) (576 SE2d 888) (2003) (in determining whether probable cause exists, magistrate should consider veracity and basis of knowledge of persons supplying hearsay information). However, unlike cases in which reversal was required because the hearsay information constituted the primary basis for the issuance of the warrant, the affidavit here contained additional information that authorized the finding of probable cause. *Powers v. State*, 261 Ga. App. at 303 (4) (applicable test is totality of the circumstances, and even where reliability of the informant and his or her information has not been shown, affidavit may still be sufficient if it contains additional information to support probable cause).

Although we agree that many of the averments in the affidavit were properly discounted by the trial court,[6] we also agree that under the totality of the circumstances, probable cause existed to justify the issuance of the warrant. The investigation into the shooting at Jones' residence was ongoing, and a suspect had not yet been arrested for that aggravated assault.[7] Thus, the need for continued investigation in the circumstances surrounding the shooting justified the issuance of the warrant for that purpose. And although the need to investigate the shooting in and of itself might not have justified the scope of the search into the outlying buildings and entire mobile home,[8] the affidavit also contained information about Jones' drug activities, which supplied a possible motive for the shooting. Jones was currently

---

[6] In addition to the discounted averments, the trial court also stated in its oral findings that he was not going to give the State the "benefit" of additional information that Detective Thompson orally provided to the magistrate concerning Jones' rap sheet because neither Thompson nor the magistrate, who testified at the hearing, gave any indication of exactly what Thompson told the magistrate about Jones' criminal history.

[7] Although the warrant alleged that an informant had identified the shooter, that information turned out to be false, and other persons were subsequently arrested for the crime.

[8] Jones does not argue on appeal that probable cause existed for a search to discover evidence of the shooting but that the search for drugs was unauthorized. See *Banks v. State*, 277 Ga. 543, 547 (3) (592 SE2d 668) (2004).

10

being prosecuted for the sale and possession of methamphetamine. Additionally, although the trial court found that Reed's statements that Jones was "known" to trade stolen goods for drugs appeared to be nothing more than rumor,[9] the affidavit also contained the information obtained from the earlier consent search, when officers observed that Jones had shelves lined with electronic equipment. This information, coupled with the type and the sophistication of the surveillance equipment surrounding Jones' property,[10] provided independent corroboration of this type of criminal activity so that the other infirmities in the affidavit were not fatal.[11] *Williams*

---

[9] Although "[o]bservations by fellow officers of government engaged in a common investigation are a reliable basis for a warrant applied for by one of their number [and] information provided by police officers, arising out of an official investigation, may be used to establish probable cause for a search warrant[,]" (citations and punctuation omitted.) *Powers v. State*, 261 Ga. App. at 302, n.9, the affidavit did not indicate that Investigator Reed was involved in an official investigation of Jones or that he had derived his information from such an investigation. See *Caffo v. State*, 247 Ga. 751, 754-55 (2) (b) (279 SE2d 678) (1981); *Chambliss v. State*, 298 Ga. App. 293, 294-95 (1) (679 SE2d 831) (2009).

[10] See *Ramey v. State*, 288 Ga. App. 800, 801 (655 SE2d 675) (2007) (describing a surveillance camera found during a premises search as "commonly used by drug dealers to alert them to a police raid").

[11] The affidavit stated that several items observed in Jones' home were used in the consumption or packaging of methamphetamine, but the averring officer did not provide any information about his training and experience to make such a conclusion. However, baggies and scales are routinely recognized as commonly used in drug distribution, and torches such as propane tanks may be used in the consumption of

11

*v. State*, 329 Ga. App. 402, 405 (765 SE2d 622) (2014); *Powers v. State,* 261 Ga. App. 296 302-03 (4) (582 SE2d 237) (2003). Considering the totality of the circumstances, including the recent shooting on Jones' property, and mindful that marginal or doubtful cases are to be decided in favor of upholding the warrant, we conclude that the magistrate had a substantial basis for concluding that a search of Jones' residence would produce evidence of the methamphetamine. Accordingly, the trial court did not err in denying Jones' motion to suppress. *Palmer*, 285 Ga. at 77-78 ("Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.") (citation omitted); *Henson v. State*, 314 Ga. App. 152, 154 (723 SE2d

methamphetamine. See, e.g., *Wiggins v. State*, 331 Ga. App. 447, 452 (771 SE2d 135) (2015) (physical precedent only) (listing some items commonly used in drug distribution); *Clewis v.* State, 293 Ga. App. 412, 413 (667 SE2d 158) (2008) (noting that during execution of search warrant, officer found "torch commonly used to heat up methamphetamine") *Hancock v. State*, 265 Ga. App. 259 (593 SE2d 2004) (noting officers found scales commonly used for weighing drugs and a box of sandwich bags drug dealers commonly used to package drugs). Although the better practice would have been to provide the officer's training and experience to support these conclusions, under the unique circumstances of this case where Jones' connection with the drug trade was otherwise corroborated and the shooting justified the search in the first instance, we conclude that the magistrate reasonably determined that there was a fair probability that evidence of a crime would be found at Jones' residence and outlying buildings.

12

456) (2012) (when issuing a warrant a magistrate properly considers "all the circumstances set forth in the affidavit" to determine whether probable cause exists.).

2. Because we have upheld the issuance of the June 1 warrant, Jones' argument that methamphetamine found during the June 11 search should have been excluded because the June 11 arrest and the resulting June 11 search warrant were "fruits of the poisonous tree" likewise fails.

3. Jones also contends that the evidence obtained as a result of the June 11 warrant should have been suppressed because the State failed to introduce a certified copy of the warrant and supporting affidavit at the motion to suppress hearing. The record shows that Jones' attorney raised this issue at the motion for new trial hearing and, after reviewing the transcript of the suppression hearing, Jones' counsel conceded that the warrant had been attached to Jones' motion to suppress and was referenced as Exhibit 3 at the motion to suppress hearing. The trial court clarified that "So however inartfully we did it, it's in there," and Jones' counsel responded in the affirmative.

Jones now argues, however, that even if the warrant may have been attached to the motion to suppress and introduced at the suppression hearing, the transcript from that hearing does not show that the affidavit supporting the June 11 warrant was

also tendered at the hearing. Again, however, at the motion for new trial hearing, Jones appears to have abandoned any argument pertaining to the State's failure to introduce the June 11 warrant, and he did not raise a separate issue concerning the introduction of the affidavit supporting the warrant. Further, the record shows that the affidavit was also attached as an exhibit to Jones' motion to suppress; accordingly, this case is distinguishable from those cases in which we have held that reversal is required because the warrant and affidavit were not tendered into evidence at the suppression hearing and do not otherwise appear in the record on appeal. *Bowman v. State*, 332 Ga. App. 407, 409 (2) (773 SE2d 33) (2015).

4. Lastly, Jones contends that the evidence obtained during the execution of the June 11 search warrant should have been suppressed because police had no right to enter his home when they arrested him on that date, and thus they were in a place they were not legally entitled to be when they smelled the odor of burnt marijuana and observed the items of drug paraphernalia, which formed the basis of probable cause to seek the June 11 warrant. However, Jones did not raise this issue in either his written motions to suppress or at the hearing on his motion; accordingly, this argument has been waived. *Harper v. State*, 285 Ga. App. 261, 266 (2) (645 SE2d

14

741) (2007) ("Because this argument is being raised for the first time on appeal as a basis for evidence suppression, it is not reviewable.").

*Judgment affirmed. Miller, P. J., and McFadden, J., concur*.